Donald W. **TRIBLETT**,
Movant–Appellant,

v.

**STATE of Missouri, Respondent–Respondent.**

No. 28359.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 27, 2007.

Matthew M. Ward, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anna L. Bunch, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Donald W. Triblett ("Movant") appeals the denial of his Rule 24.035 [1] motion for post-conviction relief in the Circuit Court of Mississippi County, Missouri. Movant sought to vacate his convictions of forcible rape, in violation of section 566.030, [2] forcible sodomy, in violation of section 566.060, burglary in the first degree, in violation of section 569.160, and elder abuse, in violation of section 565.180, for which Movant was sentenced to a total of thirty years in the Department of Corrections. An evidentiary hearing was held on October 30, 2006; Movant's Rule 24.035 motion was denied on January 9, 2007. Movant asserts that the motion court erred in denying the Rule 24.035 motion because Movant received ineffective assistance of counsel. We affirm the ruling of the motion court.

Appellate review of a Rule 24.035 motion for post-conviction relief "is limited to determining whether the findings and conclusions of the motion court are clearly

---

1. All rule references are to Missouri Court Rules (2007), unless otherwise specified.

2. All references to statutes are to RSMo 2000, unless otherwise specified.

erroneous." *Cole v. State*, 223 S.W.3d 927, 930–31 (Mo.App. S.D.2007). In order to find the decision of the trial court clearly erroneous, after review of the entire record, the appellate court must be left with a definite and firm impression that a mistake has been made. *Id.* at 931. There is a presumption that a motion court's findings of fact and conclusions of law are correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). Movant's only point on appeal challenges the denial of his post-conviction relief on the grounds that his counsel was ineffective because they "failed to clearly discuss the evidence against him which left him with the feeling that he had no choice other than to plead guilty."

The trial court found:

> The only testimony adduced at the evidentiary hearing was from Movant himself wherein Movant consistently contradicted himself. While asserting that his trial attorney failed to meet with him, discuss his options with him, or review the evidence with him, he testified *inter alia* that he met with Davis at least five to six times, that he discussed a motion to suppress with Davis, that Davis and Weiss discussed his confession with him, and that his attorneys had told him he had been identified in a lineup by the victim. Given the convoluted and contradictory nature of Movant's testimony, this Court finds no credible evidence for his claim that his attorney(s) failed to adequately meet with him and discuss his case.

The motion court did not err in its findings and in overruling Movant's motion for post-conviction relief pursuant to Rule 24.035. At the evidentiary hearing, it was Movant's burden to prove his claims by a preponderance of the evidence. Rule 24.035(i). Movant was the only person who testified at his evidentiary hearing. Despite his allegation that his attorney was ineffective for failing to discuss the evidence with him, he testified as follows:

Q. So how long did you have Dana Weis as an attorney?

A. I'd say about five—I'd say about five months.

Q. Five months? How many team—times did Dana meet with you during that five months; do you know?

A. It was about four or five times.

. . . .

Q. Do you know how many meetings you had with Chris Davis?

A. How many meetings?

Q. With Chris. Now you said five with Dana. Do you know how many—or four with Dana over a five-month period. How many did you have with Chris Davis?

A. Say about—probably about five or six or seven, I think.

. . . .

Q. Okay. Did you tell him you couldn't read, that you couldn't read this—

A. Yeah, I told him. I told Dana Weis also.

Q. And they didn't—neither of them read it [police reports] to you?

A. They read me some stuff, but like when my aunt had came in, Dana was going over it with her. She wasn't going over it with me. I was just listening.

. . . .

Q. Did any of your attorneys discuss the fact that there was a photo line-up and the victim could not identify you as the person?

A. They didn't never tell me that.

Q. Didn't never tell you that at all?

A. They told me that I was identified as—They didn't never tell me that she couldn't identify me.

Clearly, Movant rebutted his own statement that the attorney failed to discuss the evidence with him.

Movant claimed at the evidentiary hearing and to this Court that the attorneys failed to "clearly discuss the evidence against him"; he then cites what he proposes was an incorrect version of the evidence that was told to him by his attorneys. Interestingly, he does not state which of his three attorneys supposedly misstated the evidence to him but when asked whether "any of [his] attorneys discuss[ed] the fact that there was a photo line-up and the victim could not identify [him] as the person," he answered, "[t]hey didn't never tell me that." He stated "they," his *attorneys*, told him he was identified. Again, Movant was inconsistent in his claim that he was not clearly advised of the evidence against him.

Furthermore, Movant stated that his attorneys told him that the victim had identified him in a photo line-up but, in reality, she was unable to identify him; however, he presented no evidence to support his claim. There was no evidence introduced at the evidentiary hearing to support the notion that the victim was unable to identify him. Moreover, there was not even any evidence to suggest a photo line-up took place. It is Movant's burden to show that the ineffectiveness of his counsel affected the voluntariness of his guilty plea. Movant's self-serving testimony alone was not enough for the motion court; likewise, it is insufficient to overrule the findings of the motion court.

Finally, Movant's claims that he was not clearly told of the evidence by his attorneys is rebutted by the events at the guilty plea hearing. At the plea hearing, the State presented the facts as they would be proven if the case had been tried to the court. Specifically, the evidence would show that on or about March 29, 2003:

[Movant] forced his way into the residence of [the victim] in the early morning, late evening, early morning hours. At her residence at 323 Gladys. She was there by herself and asleep. Upon forcing his way in he demanded money, which he took throughout the course of this evening, some $25 to $30 from her that was located in her kitchen area.

While there [Movant] forcibly raped both vaginally and anally [the victim] against her wishes. During the course of that as well, [Movant] wrapped an ace bandage around her face and throat and began to strangle her, cutting off the circulation and breath of [the victim] while she was there laying in bed.

Movant stated that he did not remember doing any of the things he had been charged with because he was under the influence of drugs during the commission of the crime. He did remember telling the police what he did but he said he was coerced. The court asked, "How were you coerced?" Movant responded, "I was asked over and over again did I do it. I finally, you know—Said I did it." The court clarified by asking Movant, "[s]o, you're not denying you didn't do it. You're just saying that you didn't remember doing it; is that correct?" Movant answered, "I don't remember doing it. Yes you are right." Movant stated that he was making his guilty plea based on the evidence he was shown that could prove he committed the crime beyond a reasonable doubt, he felt he could not fight the case. Movant heard the facts as propounded by the State and still pled guilty on all counts based on the evidence he was shown.

The court accepted Movant's plea as an *Alford*[3] plea, finding that "[t]he State's evi-

---

3. *See North Carolina v. Alford,* 400 U.S. 25, 91    S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding

dence substantially negate[d] [Movant's] claim of innocence and show[ed] a strong factual basis to support a finding that [Movant] is guilty of the crimes charged." Previously at the hearing, the court inquired about Movant's representation and Movant stated that he had time to talk to his lawyers, they had answered all of his questions, and he was satisfied with their services. The court further found the plea was voluntarily made and Movant understood the nature of the charges against him, the range of punishment, and the consequences of his plea.

 The issue of effectiveness of counsel is material only to the extent it affects the voluntariness and understanding with which the plea was made. *Hagan v. State,* 836 S.W.2d 459, 463 (Mo. banc 1992). Movant did not show that his plea was not voluntary or that he did not understand the plea.

▮ Movant did not receive ineffective assistance of counsel which affected the voluntariness of his guilty plea. The transcripts of the guilty plea hearing and the post-conviction relief hearing both confirm that Movant understood the repercussions of his guilty plea. Although Movant's testimony at the Rule 24.035 evidentiary hearing was, in part, contrary to his statements at his sentencing hearing, it is the motion court's role to determine credibility of such statements. Since no other evidence was adduced at the evidentiary hearing, the motion court was forced to make a determination based solely on the testimony of Movant. "On a claim of ineffective assistance of counsel, 'the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, including the movant's testimo-

that a defendant could choose to plead guilty, although not admitting actual guilt, when the

ny[.]' " *Moore v. State,* 207 S.W.3d 725, 729 (Mo.App. S.D.2006) (*quoting Krider v. State,* 44 S.W.3d 850, 858 (Mo.App. W.D. 2001)). The motion court did not err in denying Movant's Rule 24.035 motion. The judgment of the motion court is affirmed.

LYNCH, C.J., BARNEY, P.J., concur.

record strongly supports a finding of guilt).